[No. S139171. Apr. 16, 2007.]

FIRESIDE BANK, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
SANDRA GONZALEZ, Real Party in Interest.

C OUNSEL

Severson & Werson, Jan T. Chilton and Mark D. Lonergan for Petitioner.

Leland Chan for California Bankers Association as Amicus Curiae on behalf of Petitioner.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Kemnitzer, Anderson, Barron & Ogilvie, Carol McLean Brewer, Andrew J. Ogilvie; Alexander Community Law Center and Scott C. Maurer for Real Party in Interest.

O PINION

**WERDEGAR, J.**—A largely settled feature of state and federal procedure is that trial courts in class action proceedings should decide whether a class is proper and, if so, order class notice before ruling on the substantive merits of the action. (See *Green v. Obledo* (1981) 29 Cal.3d 126, 146 [172 Cal.Rptr. 206, 624 P.2d 256] (*Green*); Fed. Rules Civ.Proc., rule 23(c)(1)(A), 28 U.S.C.; *Hickey v. Duffy* (7th Cir. 1987) 827 F.2d 234, 237.) The virtue of this sequence is that it promotes judicial efficiency, by postponing merits rulings until such time as all parties may be bound, and fairness, by ensuring that parties bear equally the benefits and burdens of favorable and unfavorable merits rulings. The rule stands as a barrier against the problem of "one-way intervention," whereby not-yet-bound absent plaintiffs may elect to stay in a class after favorable merits rulings but opt out after unfavorable ones.

Here, over class defendant Fireside Bank's objections and to class representative Sandra Gonzalez's surprise, the trial court ruled on the substantive merits concurrently with deciding that a class could be certified and before class notice had gone out. The Court of Appeal denied writ relief, concluding the rule we endorsed in *Green* governing the order of operations in class action proceedings was largely a matter of discretion and was not violated by the trial court, and also rejecting Fireside Bank's substantive challenges to class certification.

We reverse. While the *Green* rule is subject to exceptions, leaving trial courts vested with a certain degree of discretion in its application, no such exception is applicable here and thus the trial court abused its discretion in

acting as it did. On the merits, however, its class certification order was correct. Accordingly, we leave in place the trial court's class certification order, direct that the trial court's entry of judgment on the pleadings in favor of Gonzalez be vacated, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In early 2001, Gonzalez purchased a used van under a conditional sales contract obligating her to make monthly payments and to keep the van insured. The dealer assigned the contract to Fireside Bank, then known as Fireside Thrift Co. Gonzalez purchased the van for her father, Guadalupe Gonzalez, with the intention that he use and pay for it. When certain sums claimed by Fireside Bank allegedly became overdue, it repossessed the van. On September 28, 2001, it sent a notice to Gonzalez, stating that she could redeem the van by paying the full amount due under the contract within 15 days. The notice correctly itemized the elements of the outstanding debt, i.e., a contract balance of $14,588.73, late charges of $24.91, repossession cost of $300, a credit for unearned finance charges of $2,713.46, and a credit for unearned insurance premiums of $1,070. However, the notice stated the "total amount due"—the amount Gonzalez had to pay within 15 days to avoid having the van sold off—was $13,843.64, when the actual sum of the itemized charges, less credits, was $11,130.18. The "total amount due" thus overstated the amount actually due by $2,713.46, the amount of the credit for unearned finance charges. Fireside Bank attributes this discrepancy to "a computer error" and concedes that similarly inaccurate notices were sent to almost 3,000 other borrowers.

In October 2002, Fireside Bank filed a complaint against Gonzalez alleging that it had sold the van for $3,100 and seeking a judgment for the remaining contract balance of $8,073.47. Gonzalez answered the complaint and asserted as an affirmative defense that recovery was barred by Fireside Bank's failure to comply with the Rees-Levering Motor Vehicle Sales and Finance Act (Rees-Levering Act). (See Civ. Code, §§ 2981–2984.4.)

Thereafter, Gonzalez filed a cross-complaint alleging that Fireside Bank's notice of intent to sell failed to comply with the Rees-Levering Act's notice requirements and that Fireside Bank thereby lost its right to pursue a deficiency judgment. She asserted causes of action for (1) conversion, in that Fireside Bank had "repossessed the van before the loan was in default"; (2) violations of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.); and (3) illegal, unfair, and deceptive business practices in violation of the Rees-Levering Act and the unfair competition law (UCL)

(Bus. & Prof. Code, § 17200 et seq.). The challenged business practices included serving notices that did not comply with the Rees-Levering Act, thereby forfeiting the right to claim deficiencies, yet nonetheless pursuing meritless collection actions against borrowers.

In April 2004, Gonzalez filed a motion for judgment on the pleadings on Fireside Bank's complaint. She argued that (1) the Rees-Levering Act required Fireside Bank to include in its notice of intent to sell both the amount owed on the contract, which could be paid within 15 days to avoid sale of the vehicle, and an itemization of how that amount was arrived at (see Civ. Code, § 2983.2, subd. (a)(1)); (2) the notice attached to the complaint overstated the amount due by $2,713.46 because it failed to properly credit unearned finance charges; and (3) because Fireside Bank had failed to provide a proper notice, it could not pursue a deficiency judgment. Fireside Bank opposed this motion both on the merits and procedurally. Procedurally, it argued that before obtaining a ruling on the motion Gonzalez must seek or forswear certification of a class, a potential remedy to which her counsel had alluded, and the trial court should take the motion off calendar or deny it without prejudice until class issues, if any, were resolved.

At the initial April 27, 2004, hearing on the motion, the trial court asked whether the action might proceed as a class action, in which case ruling on the motion would be premature. Gonzalez's counsel advised the court that Fireside Bank had just provided long-awaited discovery disclosing for the first time that the problem affected nearly 3,000 notices. Gonzalez's counsel further indicated that a decision on whether to seek class treatment was awaiting Fireside Bank's responses to newly propounded discovery. The trial court continued the hearing for approximately three months.

Gonzalez subsequently filed an amended cross-complaint. The amended cross-complaint added a class claim under the Rees-Levering Act and the UCL on behalf of all persons who had received postrepossession notices from Fireside Bank on accounts started in California in which the listed redemption amount failed to subtract the credit for unearned finance charges. Gonzalez moved for class certification; Fireside Bank opposed the motion.

The hearing on class certification was continued to July 20, 2004, the date already set for a status conference and for the continued hearing on the motion for judgment on the pleadings. At the hearing, the trial court expressed an initial inclination to certify the class and, after hearing argument on the issue, said it would have a ruling by the end of the week.

The parties then turned to the motion for judgment on the pleadings. Fireside Bank's counsel again objected to any ruling on the merits until certification issues were resolved. The trial court assured counsel that it was "not going to rule" on the motion for judgment on the pleadings "until I decide the issue of certification." Counsel clarified that Fireside Bank opposed any ruling on the motion until *notice* had been given to the class, if any, and the time for members to opt out had expired. The court replied: "I . . . don't disagree with that . . . ." Gonzalez's counsel concurred: "[I]f the defendant objects and doesn't want a ruling prior to class certification, then the defendant is entitled to have a ruling deferred." The trial court declined argument on the motion for judgment on the pleadings, indicating the motion was "in effect . . . going to go off calendar" pending a ruling on certification, but that a further hearing would be set if it denied certification.

On August 20, 2004, despite these assurances, the trial court issued formal orders (1) granting class certification, and (2) granting Gonzalez's motion for judgment on the pleadings against Fireside Bank's complaint on the basis that Fireside Bank had "failed to comply with the notice requirements under the Rees-Levering Act," thus barring any recovery of a deficiency judgment. (See Civ. Code, § 2983.2.)

Fireside Bank sought writ relief. It argued that, by ruling on the motion for judgment on the pleadings before notice had been given to the class, the trial court had impermissibly provided class members an opportunity for one-way intervention. Although Gonzalez had acceded to Fireside Bank's request for a deferred ruling in the trial court, she opposed writ relief, arguing that the trial court's ruling created no risk of one-way intervention because it did not resolve the merits of the class action.

The Court of Appeal denied relief. After analyzing state and federal authorities at length, it concluded (1) any support for a rule against one-way intervention was tenuous at best, and the trial court retained broad discretion to issue merits rulings before deciding class issues; (2) even if such a rule existed, it did not apply to rulings on a class defendant's claims against the class representative; and (3) in any event, Fireside Bank had not demonstrated it was prejudiced by the trial court's rulings. The Court of Appeal further rejected Fireside Bank's objections to the merits of the class certification order.

We granted review to address the ongoing validity, scope, and application of the rule against one-way intervention.

Discussion

## I. *One-way Intervention*

### A. *The Rule Against One-way Intervention*

"The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure. It rests on considerations of necessity and convenience, adopted to prevent a failure of justice. [Citation.] [¶] But while [section 382] was designed to foster justice, class actions may create injustice. The class action may deprive an absent class member of the opportunity to independently press his claim, preclude a defendant from defending each individual claim to its fullest, and even deprive a litigant of a constitutional right." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525 P.2d 701].)

As originally adopted, the class action device included no rules governing when to resolve merits and class issues. (See Code Civ. Proc., § 382; Fed. Rules Civ.Proc., former rule 23, as adopted in 1937, 28 U.S.C.) One resulting potential injustice was the possibility for one-way intervention, a consequence of "actions for damages in which a decision for or against one member of the class did not inevitably entail the same result for all. One party could style the case a 'class action,' but the missing parties would not be bound. A victory by the plaintiff would be followed by an opportunity for other members of the class to intervene and claim the spoils; a loss by the plaintiff would not bind the other members of the class. (It would not be in their interest to intervene in a lost cause, and they could not be bound by a judgment to which they were not parties. [Citation].) So the defendant could win only against the named plaintiff and might face additional suits by other members of the class, but it could lose against all members of the class. This came to be known as 'one-way intervention,' which had few supporters." (*Premier Elec. Const. Co. v. N.E.C.A., Inc.* (7th Cir. 1987) 814 F.2d 358, 362; see also *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538, 545–547 [38 L.Ed.2d 713, 94 S.Ct. 756].) One-way intervention left a defendant open to "being pecked to death by ducks. One plaintiff could sue and lose; another could sue and lose; and another and another until one finally prevailed; then everyone else would ride on that single success. This sort of sequence, too, would waste resources; it also could make the minority (and therefore presumptively inaccurate) result the binding one." (*Premier Elec. Const. Co.*, at p. 363.)

In the federal courts, this problem provisionally was solved by amending Federal Rules of Civil Procedure rule 23 (28 U.S.C.). In 1966, the rule was rewritten to end one-way intervention by requiring that class issues be

resolved "[a]s soon as practicable after the commencement of an action brought as a class action." (Fed. Rules Civ.Proc., former rule 23(c)(1), as amended in 1966, 28 U.S.C.; see Fed. Rules Civ.Proc., rule 23, advisory com. note on 1966 amendments ["Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class, as above stated"]; *American Pipe & Construction Co. v. Utah, supra,* 414 U.S. at p. 547 [1966 amendments were designed to end one-way intervention].) Under the revised rule, "potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation 'as soon as practicable after the commencement' of the action when the suit is allowed to continue as a class action and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse." (*American Pipe & Construction Co.,* at p. 549.)[1]

While the federal system dealt with the problem of one-way intervention by amending its rules of procedure, California responded judicially, beginning with a pair of decisions in the 1970's, *Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006 [117 Cal.Rptr. 485] (*Home Savings I*) and *Home Sav. & Loan Assn. v. Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal.Rptr. 511] (*Home Savings II*) (collectively *Home Savings*).

In *Home Savings I*, the plaintiffs filed a putative class action challenging loan agreement late charges. The trial court proposed to try first the issues whether the late charges were invalid penalties and whether the defendant bank's affirmative defenses barred recovery, and only then to resolve class issues. The Court of Appeal issued a writ of prohibition restraining the trial court from "proceeding to trial on the substantive merits of the cause without prior adjudication of the procedural class-action issues, viz. suitability of the action as a class action, determination of the composition of the class, and appropriate notification of members of the class." (*Home Savings I, supra,* 42 Cal.App.3d at p. 1015.)

The problem with the trial court's procedure, the Court of Appeal explained, was that it exposed the defendant to one-way intervention. "Prompt

---

[1] Federal Rules of Civil Procedure rule 23 was amended again in 2003 to allow class issues to be resolved "at an early practicable time" (Fed. Rules Civ.Proc., rule 23(c)(1)(A), 28 U.S.C.) and to allow the class certification order to be subsequently modified, but these changes were not intended to resuscitate one-way intervention. (Fed. Rules Civ.Proc., rule 23, advisory com. note on 2003 amendments [changes "[do] not restore the practice of 'one-way intervention' that was rejected by the 1966 revision of Rule 23"].)

and early" determination of the class was necessary so that class members might receive notice. (*Home Savings I, supra,* 42 Cal.App.3d at p. 1010.) In contrast, "[t]he vice in the procedure followed by the trial court is that it allows so-called 'one-way intervention,' a procedure under which potential members of the class can reserve their decision to become part of the class until the validity of the cause asserted by the named plaintiffs on behalf of the class has been determined. While one-way intervention has obvious attractions for members of the class on whose behalf an action has been brought in that it creates for them a no-lose situation, for a defendant it holds the terrors of an open-ended lawsuit that cannot be defeated, cannot be settled, and cannot be adjudicated. To him it presents a classic no-win option." (*Id.* at p. 1011.) Moreover, in *Home Savings I,* one-way intervention was no mere chimera; seven other class actions involving the same issues were already pending. (*Id.* at p. 1009.)

On remand, the plaintiffs sought summary adjudication that the defendant bank's late charges were a void penalty. Once again, the Court of Appeal granted writ relief precluding a ruling on the motion until class issues had been resolved. It rejected any distinction between permitting trial before class certification and permitting adjudication of substantive issues by motion. (*Home Savings II, supra,* 54 Cal.App.3d at p. 211.)

Other Courts of Appeal thereafter generally followed the *Home Savings* rule precluding merits rulings before resolution of class issues. (See *Hypolite v. Carleson* (1975) 52 Cal.App.3d 566, 583 [125 Cal.Rptr. 221] [holding "[t]he rule should be—and still is—that the class issues tendered in a complaint filed as a class action should ordinarily be resolved before the cause is tried on its merits"]; *Travelers Ins. Co. v. Superior Court* (1977) 65 Cal.App.3d 751, 756–757 [135 Cal.Rptr. 579] [concluding that under *Home Savings,* "[t]he law is now firmly established that the trial court in a class action should first try the issue of identity of the class and designate the appropriate form and manner of notice to such class before trying the issue of the defendant's liability"]; *Kass v. Young* (1977) 67 Cal.App.3d 100, 104–106 [136 Cal.Rptr. 469] [vacating default judgment entered before class certification in violation of *Home Savings*]; *Rose v. City of Hayward* (1981) 126 Cal.App.3d 926, 937 [179 Cal.Rptr. 287] [holding class defendants have right to have class issues resolved before merits]; but see *Lowry v. Obledo* (1980) 111 Cal.App.3d 14, 23–24 [169 Cal.Rptr. 732] [declining to follow *Home Savings* in a case primarily seeking declaratory and injunctive relief].)

We first noted and discussed at length the *Home Savings* rule in *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 16–17 [141 Cal.Rptr. 20, 569 P.2d 125]. We "assume[d], for the purposes of the present proceeding, that the reasoning in the [*Home Savings* cases was] sound." (*Id.* at p. 17.)

However, because the case involved a public attorney general action, not a private class action, we had no occasion to test that assumption and left open the question of the rule's validity and scope.

Thereafter, we formally adopted the *Home Savings* rule in *Green, supra*, 29 Cal.3d 126, in the context of a belated motion to decertify a class. In an action challenging aid to families with dependent children (AFDC) regulations, the trial court granted the plaintiffs summary judgment and certified a class. It subsequently partially granted the defendants' motion to decertify the class, limiting the class to present and future AFDC recipients and excluding past recipients. (*Id.* at pp. 133–134.)

■ We reversed. We cited the *Home Savings* rule with approval: "[O]ur courts have held that procedural class-action issues—including the composition of the class—must ordinarily be resolved before a decision on the merits . . . ." (*Green, supra*, 29 Cal.3d at p. 146, citing *Home Savings I, supra*, 42 Cal.App.3d at pp. 1012–1014, and *Home Savings II, supra*, 54 Cal.App.3d at pp. 211–214.) We explained the rule's rationale: " '[U]nless a decision on the merits is postponed until after the class issues are decided, a defendant is subject to "one-way intervention," which would allow potential class members to elect whether to join in the action depending upon the outcome of the decision on the merits. Thus, if the merits were decided favorably to the class, and notice followed such determination, most class members would join in the action, whereas they would decline if the determination was against the class. [¶] From a defendant's viewpoint, this is said to result in "an open-ended lawsuit that cannot be defeated, cannot be settled, and cannot be adjudicated." [Citation.]' " (*Green*, at pp. 146–147, quoting *People v. Pacific Land Research Co., supra*, 20 Cal.3d at pp. 16–17.) We then extended the rule, holding that it should apply not only to protect defendants from a belated motion for certification, but also to protect plaintiffs from a belated motion for decertification; a defendant should not be allowed to sandbag a plaintiff, withholding its best case against certification and then seeking decertification if it suffered an unfavorable merits ruling. (*Green*, at p. 147.) Thus, "whether the motion to certify or decertify be made by the plaintiff or the defendant, [it must] be determined 'before the decision on the merits.' " (*Id.* at p. 148, citing Fed. Rules Civ.Proc., rule 23(c)(1), 28 U.S.C.)

However, we also "decline[d] to fashion an iron-clad standard removing all jurisdiction from a trial court to decertify a class or part thereof after such a decision" on the merits. (*Green, supra*, 29 Cal.3d at p. 148.) Instead, we allowed belated decertification in limited instances: "It would be both unduly rigid and unjust to force the maintenance of [a class] action even when there is a proper reason for decertification after judgment. [Citation.] Before judgment, a class should be decertified 'only where it is clear there exist

changed circumstances making continued class action treatment improper.'
[Citation.] A fortiori, a similar showing must be made to warrant decertification after a decision on the merits. This standard will prevent abuse on the part of the defendant while providing the trial court with enough flexibility to justly manage the class action." (*Ibid.*) Of course, just as we recognized in *Green* that there was no reason not to apply the general *Home Savings* rule to decertification motions, so there is no reason not to apply this limited *Green* exception to certification motions. Thus, under *Green*, postmerits certification may be permitted when there is a clear showing of changed circumstances.

Elsewhere, we have had occasion to consider the application of the *Home Savings* rule in the slightly different context where a defendant either fails to object or itself initiates a merits motion before class certification and notice have been resolved. In *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362 [149 Cal.Rptr. 360, 584 P.2d 497] (*Civil Service Employees Ins. Co.*), the plaintiff sought class certification and, one week later, partial summary judgment of certain affirmative defenses. As in this case, the trial court granted both motions simultaneously. By way of a writ, the defendant challenged the grant of partial summary judgment solely on procedural grounds, arguing that it violated the *Home Savings* rule. We found no error because the defendant had failed to object to the motion as premature before the trial court ruled on it, holding "that a defendant waives whatever due process rights it may possess when it voluntarily accedes to a trial court decision on the merits of an issue before notice is provided to absent class members." (*Civil Service Employees Ins. Co.*, at p. 373.) By failing to object, the defendant assumed the risk that it might win and be unable to bind unnotified class members, or lose and face the prospect of one-way intervention. (*Id.* at p. 374.)[2]

In *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256 [178 Cal.Rptr. 612, 636 P.2d 575], before class certification or notice had been addressed, the defendant successfully demurred to an action challenging an unemployment benefits statute as discriminatory. The Court of Appeal reversed, holding the statute was in fact unconstitutional, and on remand the trial court certified a class over the defendant's *Home Savings* objection. Following the principles set out in *Civil Service Employees Ins. Co., supra,* 22 Cal.3d 362, we denied writ relief. Because the defendant had filed a demurrer and sought early resolution of the merits, it could not complain that resolution of the merits preceded any class determination. (*Employment Development Dept.*, at pp. 263–265; see also *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429,

---

[2] Because the defendant waived any objection, we found it unnecessary to "pass on the soundness of the *Home* [*Savings*] decisions' due process analysis" (*Civil Service Employees Ins. Co., supra,* 22 Cal.3d at p. 373), instead leaving that issue open until our decision three years later in *Green, supra,* 29 Cal.3d 126.

440 & fn. 7 [97 Cal.Rptr.2d 179, 2 P.3d 27] [defendants are free to bring precertification dispositive motions]; *Rose v. City of Hayward, supra,* 126 Cal.App.3d at p. 937 ["Where a defendant voluntarily accedes to a trial court hearing on the merits prior to determination of the class issue, he thereby waives his right to a class certification prior to hearings on the substantive merits"].)

From these precedents we glean the following rules governing the parties' and trial court's orderly conduct of putative class action cases. First, a defendant must actively preserve its protection against one-way intervention by objecting. If it fails to timely object, or affirmatively seeks resolution of the merits before certification, it will be deemed to have waived its rights. (See *Civil Service Employees Ins. Co., supra,* 22 Cal.3d at pp. 373–374; *Employment Development Dept. v. Superior Court, supra,* 30 Cal.3d at pp. 262–265.) Second, the plaintiffs should seek certification before moving for any resolution of the merits. (Cf. Cal. Rules of Court, rule 3.764(b) ["A motion for class certification should be filed when practicable"].) If they seek certification after seeking resolution of the merits then, in the absence of a defense waiver, they must demonstrate changed circumstances or other good cause justifying the belated motion before the trial court may consider it. (See *Green, supra,* 29 Cal.3d at p. 148.) Third, though trial courts generally have broad discretion to manage and order class affairs,[3] in the absence of a defense waiver they should not resolve the merits in a putative class action case before class certification and notice issues absent a compelling justification for doing so.

These rules are the logical consequence of the need to protect against the harms of one-way intervention, harms sufficiently real that the federal courts amended rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.) to counter them. Indeed, in dicta we have gone so far as to attribute to defendants a due process right to avoid one-way intervention. (See *People v. Pacific Land Research Co., supra,* 20 Cal.3d at p. 16; accord, *Rose v. City of Hayward, supra,* 126 Cal.App.3d at p. 937; *Home Savings I, supra,* 42 Cal.App.3d at p. 1012.) To prevent one-way intervention, courts must ensure that affected parties are bound before the merits are decided; to bind absent plaintiffs, courts must give them notice; and to give plaintiffs notice, courts must first resolve whether and on what scale a class is appropriate.

The Court of Appeal read *Green* as establishing no more than a weak general preference for deciding class issues first and held that trial courts retain broad discretion to depart from that order of operations. This overstates matters considerably. While it is true we declined to strip trial courts of all

---

[3] See *Linder v. Thrifty Oil Co., supra,* 23 Cal.4th at page 443; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 820–821 [94 Cal.Rptr. 796, 484 P.2d 964].

authority to certify or decertify a class after a decision on the merits, we confined the trial court's authority to do so to situations involving a clear showing of changed circumstances. (*Green, supra,* 29 Cal.3d at p. 148.) We further recognized that "it is desirable for the trial court to retain some measure of flexibility in handling a class action" (*ibid.*); consequently, in an individual case compelling justifications may exist that will support a trial court's decision to depart from the usual order. Absent a finding of a compelling justification, however, for the trial court to refuse the defendant's request to resolve class issues before merits issues is an abuse of discretion.

Conversely, Fireside Bank depicts the rules governing the order of operations in class action proceedings as mandatory in the absence of a defense waiver. They are not. As class actions are originally creatures of equity (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 458), so the rules for administering them must be equitable. By leaving open a narrow exception for cases presenting compelling justifications, we intend the trial courts to retain sufficient discretion to avoid inequitable outcomes in a given case.[4]

Thus, the rules are neither as flexible as the Court of Appeal would have them nor as rigid as Fireside Bank portrays them. Contrary to the Court of Appeal's intimation, the rules have clearly defined parameters; contrary to Fireside Bank's argument, they are not sacrosanct, in recognition of the broad discretion trial courts rightfully possess to order class action proceedings. The rules provide flexibility, but not infinite, open-ended flexibility: trial courts may not depart from the usual order of decision for simply any reason that seems appropriate at the time.

### B. Scope

We next consider the range of motions that implicate the rules governing one-way intervention. Here, Gonzalez argues, and the Court of Appeal agreed, that her motion for judgment on the pleadings on Fireside Bank's claim against her is not such a motion.

 We begin with the recognition that the scope of any rule should be coextensive with its rationale. That is, the interest in postponing a substantive ruling in a case until after resolution of class issues depends precisely on the extent to which the ruling gives rise to concerns about one-way intervention.

---

[4] Thus, for example, if a defendant intentionally withholds information on class size timely sought by the plaintiff, it risks the belated revelation of information establishing numerosity constituting changed circumstances that would support a late motion for class certification. (See *Postow v. OBA Federal S. & L. Ass'n* (D.C. Cir. 1980) 201 U.S. App.D.C. 384 [627 F.2d 1370, 1383–1384] [recognizing equitable considerations may require permitting postmerits certification].)

In turn, the extent to which a given ruling gives rise to such concerns depends not on the form of the ruling but on its substance. The *Home Savings II* court effectively recognized as much in concluding that precertification summary adjudication, as much as precertification trial, should be disapproved: "The key words in *Home [Savings] I* are *substantive merits*, not *trial*. The controlling factor is not the way the superior court determines the substantive merits of the cause, but whether it does so prior to adjudication of the procedural class issues and prior to notification of the members of the class for whose benefit the action has been brought." (*Home Savings II, supra*, 54 Cal.App.3d at p. 211.)

Thus, the relevant question is whether a given ruling affects the merits of the class claims in a way that would create a risk of one-way intervention. Decisions reached after trial, or on summary judgment or summary adjudication, or on a motion for judgment on the pleadings, all may do so to varying extents, depending on the subject matter of the ruling.[5] Thus, the fact the ruling here resolved Fireside Bank's claim against Gonzalez, and not Gonzalez's claim against Fireside Bank, does not alone immunize it from *Green*'s requirements.

In justifying its refusal to apply *Home Savings* and *Green* here, the Court of Appeal noted that many rulings may offer substantial hints as to the likely substantive outcome of a given case. We agree. But this is no reason not to require trial courts to postpone such rulings until after certification and class notice, if any. The interest in postponing bringing or ruling on any motion until after class issues have been resolved is directly proportional to the extent to which a ruling would implicate one-way intervention concerns. The greater the concern, the more compelling a contrary justification will be needed to support immediate resolution; the lesser the concern, the more slender a contrary justification will suffice. In each instance where a defendant asserts its *Home Savings* rights, the trial court should consider (1) the degree to which the given motion poses one-way intervention problems, balanced against (2) the compelling justifications proffered by the moving party for nevertheless deciding the given motion in advance of resolving class issues. The greater the concerns, the more compelling the countervailing justification must be. That one-way intervention concerns cannot always be avoided offers no reason not to avoid them when to do so is possible and no more compelling interest justifies disregarding them.

---

[5] We need not, and indeed could not, offer an exhaustive list of those motions which in an individual case may affect the merits to such an extent as to create one-way intervention concerns. We leave it to defense counsel to assert *Home Savings* rights in those instances where they perceive such a risk, and trial courts to exercise their discretion in evaluating the extent to which such concerns are valid in a given instance.

Gonzalez further argues that the rules governing one-way intervention should not come into play because the trial court's decision leaves unresolved Fireside Bank's various affirmative defenses. We reject the argument.

In *Home Savings II, supra,* 54 Cal.App.3d 208, the Court of Appeal addressed a parallel situation. The plaintiffs there sought partial summary judgment of the key legal issue in the case—whether the defendant's late charges violated Civil Code section 1670. Resolution of that issue would leave other questions unresolved, but because the issue was the principal one in the case, the Court of Appeal correctly recognized that its resolution would create a significant risk of one-way intervention. (*Home Savings II,* at pp. 211–213.)

Notably, in *Civil Service Employees Ins. Co., supra,* 22 Cal.3d 362, the plaintiff brought a motion for summary adjudication of only two affirmative defenses. However, there again, "[a]s a practical matter [the] motion requested the court to resolve the principal legal issue presented by the case . . . ." (*Id.* at p. 369.) The defendant invoked its *Home Savings* rights on appeal, and we implicitly recognized the rule would otherwise apply before concluding on the facts that the defendant had waived its rights. What was implicit in *Civil Service Employees Ins. Co.,* we make explicit here: It matters not the form of a motion or whether it may leave some issues unresolved. What matters is the extent to which a motion impacts the principal legal issue or issues in a case and thereby poses for the defendants the risk of one-way intervention depending on its outcome.

### C. *Application*

Here, Gonzalez brought a motion for judgment on the pleadings on Fireside Bank's individual claim against her. She thereafter filed a motion for class certification.[6] Fireside Bank timely raised a *Home Savings* objection. The trial court granted both motions.

■ Although the trial court's ruling on Gonzalez's motion on the pleadings leaves unresolved Fireside Bank's affirmative defenses, it squarely resolves the central issue in Gonzalez's (and the putative class's) claims against Fireside Bank—whether Fireside Bank's notices violated the Rees-Levering Act and thus whether they were unlawful for purposes of the UCL. It matters not that the substantive motion was brought by Gonzalez as a defendant, while the motion for class certification was brought by her as plaintiff in her cross-action. As a practical matter, because the motion for

---

[6] This sequence was a consequence of Fireside Bank's belated discovery response establishing numerosity sufficient to support a class, a changed circumstance that justified the order of filing.

judgment on the pleadings involves determination of substantive issues common to both actions, it presents the same one-way intervention concerns a ruling on Gonzalez's affirmative claims would. As such, it is subject to the rules governing one-way intervention. The trial court was warranted in deciding the issue before a class had been notified only if it found a compelling justification existed.

Given a trial court's broad discretion to structure and streamline class action proceedings, the appropriate standard of review is abuse of discretion. Here, there was no compelling justification for resolving the merits issue first; indeed, there was no justification at all. The trial court could have held the motion for judgment on the pleadings in abeyance, as it indicated to the parties it would, and thereby eliminated any conceivable harm to Fireside Bank's interests. Gonzalez did not argue delay of her motion for judgment on the pleadings would materially prejudice her. To the contrary, she openly acceded to the proposed delayed ruling on her motion. Thus, the trial court abused its discretion by reversing the order of operations and ruling on the motion for judgment on the pleadings simultaneously with its ruling on class certification, before sending out class notice.

The Court of Appeal nevertheless thought no relief was warranted because it concluded Fireside Bank could show no prejudice from the trial court's adverse ruling granting Gonzalez's motion for judgment on the pleadings. It is true that, had the motion been denied, the premature attempt to resolve the merits might have resulted in little prejudice: a ruling that declined to decide whether Gonzalez was entitled to judgment as a matter of law because factual issues remained would have left open the possibility that either side might prevail on the principal issue in this case. But the grant of Gonzalez's motion prejudiced Fireside Bank by necessarily exposing it to the problem of one-way intervention. Where, as here, the trial court has issued a pro-plaintiff ruling on the merits, the effect is to weight against opting out the metaphorical coin that potential class members receiving notice of the action might toss to decide whether to remain in the class, virtually eliminating any incentive to opt-out, likely reducing the number of opt-outs, and increasing Fireside Bank's exposure in the action. The Court of Appeal erred in finding no prejudice.

### D. Remedy

We turn to the question of the appropriate remedy. Class actions are "devices of courts of equity . . . [created] to promote the interests of justice." (*Hypolite v. Carleson, supra,* 52 Cal.App.3d at p. 582; accord, *Hansberry v. Lee* (1940) 311 U.S. 32, 41 [85 L.Ed. 22, 61 S.Ct. 115]; *City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 458.) As such, any remedy to cure procedural missteps in handling a class action must itself be equitable.

If a party seeks and obtains a merits ruling before moving for class certification, it must demonstrate changed circumstances to justify its belated motion for class certification. (*Green, supra,* 29 Cal.3d at p. 148.) Absent a showing of changed circumstances, the trial court may not consider the motion; absent a further finding of a compelling justification, it may not grant it. In cases of an erroneous grant of certification, the class generally must be vacated. (*Peritz v. Liberty Loan Corporation* (7th Cir. 1975) 523 F.2d 349, 354–355; see *State v. Doody* (Ind.Ct.App. 1990) 556 N.E.2d 1357, 1362.)

This case presents a slightly different scenario. Here, although Gonzalez moved for judgment on the pleadings before seeking class certification, this order of filing was justified by changed circumstances. (See, *ante,* fn. 6.) Moreover, Gonzalez thereafter agreed to have all class issues resolved before any ruling on the merits. Given the trial court's express acknowledgment that class issues should be resolved first and its indication it would do so, Gonzalez had no reason to withdraw her motion for judgment on the pleadings. She bears no responsibility for the trial court's subsequent error.

On these facts, to bar Gonzalez from pursuing a class action in response to the trial court's error would be inequitable. Instead, vacating the trial court's premature merits ruling and ordering the trial court to disregard it and decide any future motion de novo will reduce the risk of one-way intervention for Fireside Bank without unduly punishing plaintiffs.

We note that various Courts of Appeal have similarly recognized that a remedy short of barring further class proceedings may suffice. In *Travelers Ins. Co. v. Superior Court, supra,* 65 Cal.App.3d 751, the trial court erroneously refused the defendant's request that it resolve class issues before the merits. Taking guidance from our observation in *Vasquez v. Superior Court, supra,* 4 Cal.3d at page 821, that courts should be flexible and innovative in designing class procedures that were "fair to the litigants and expedient in serving the judicial process," (italics omitted) the Court of Appeal concluded it was not required to bar class certification. (*Travelers Ins. Co.,* at p. 759.) Instead, it achieved "a more equitable result" (*Id.* at p. 758) by vacating the trial court's summary adjudication of liability against the defendant. And in *Hypolite v. Carleson, supra,* 52 Cal.App.3d 566, emphasizing that class actions are intended "to promote the interests of justice" (*id.* at p. 582), the Court of Appeal concluded the equities of the case dictated no relief at all despite a *Home Savings* violation: the defendant had admitted all class allegations throughout and thus would not be prejudiced by a belated class certification (*id.* at pp. 581–583). (See also *Grigg v. Robinson Furniture Co.* (1977) 78 Mich.App. 712 [260 N.W.2d 898, 906–908] [appellate court vacated premature damages award as inequitable, but allowed plaintiffs to pursue class certification on remand].)

Fireside Bank complains that any remedy short of a bar against all further class proceedings would be ineffective, evidently believing that a significant number of potential class members who would otherwise have opted out will now, because of the trial court's ruling for Gonzalez *and despite our direction that it be vacated,* elect to remain in the class. Whatever the frequency with which parties generally opt out,[7] we think the likelihood of this risk materializing here is sufficiently small as to be outweighed by the equities against punishing Gonzalez and the putative class for the trial court's error. We conclude vacating the trial court's premature merits ruling will suffice to diminish any prejudice from one-way intervention.

## II. *Class Certification Merits*

We consider as well Fireside Bank's objections to the merits of the trial court's class certification.

The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." (*Linder v. Thrifty Oil Co.,* supra, 23 Cal.4th at p. 435.) A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326–327 [17 Cal.Rptr.3d 906, 96 P.3d 194]; *Linder,* at pp. 435–436.)

Class certification requires proof (1) of a sufficiently numerous, ascertainable class, (2) of a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. (See Code Civ. Proc., § 382; *Sav-On Drug Stores, Inc. v. Superior Court,* supra, 34 Cal.4th at p. 326; *Linder v. Thrifty Oil Co.,* supra, 23 Cal.4th at p. 435; *City of San Jose v. Superior Court,* supra, 12 Cal.3d at p. 459.) In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].) Fireside Bank contests only Gonzalez's proof of typicality and superiority. The Court of Appeal identified no abuse of discretion on either basis, and neither do we.

---

[7] See Eisenberg and Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues* (2004) 57 Vand. L.Rev. 1529 (analyzing opt-out rates).

## A. *Typicality*

Fireside Bank does not contend that the trial court applied improper criteria or rested its order on erroneous assumptions, only that the order itself is unsupported by substantial evidence. In particular, it contends that Gonzalez cannot represent the class because (1) she has failed to present evidence establishing she has standing and has suffered injury typical of the class, and (2) she is subject to unique defenses not typical of the class.

Gonzalez has standing. She, like other members of the putative class, was subjected to the same alleged wrong: deprivation of a fair opportunity to redeem the financed vehicle, followed by an unlawful demand for payment. The record demonstrates Fireside Bank repossessed Gonzalez's vehicle and pursued a deficiency judgment against her. She thus has standing to seek a declaration that Fireside Bank is unlawfully asserting a debt against her, as well as an injunction against all further collection efforts. The record further shows Gonzalez (or someone on her behalf) made a postrepossession payment against the alleged deficiency; upon proof she made that payment, Gonzalez also has standing to seek restitution.[8]

██ We similarly find no abuse of discretion in the trial court's certification of a class over Fireside Bank's insistence that unique defenses apply to Gonzalez. Certification requires a showing that the class representative has claims or defenses typical of the class. (*Sav-On Drug Stores, Inc. v. Superior Court, supra,* 34 Cal.4th at p. 326.) The corollary of this, as the federal courts have recognized, is that evidence that a representative is subject to unique defenses is one factor to be considered in deciding the propriety of certification. (E.g., *Beck v. Maximus, Inc.* (3d Cir. 2006) 457 F.3d 291, 296–297; *Hanon v. Dataproducts Corp.* (9th Cir. 1992) 976 F.2d 497, 508; *Gary Plastic Packaging v. Merrill Lynch* (2d Cir. 1990) 903 F.2d 176, 180.) The specific danger a unique defense presents is that the class "representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class." (*Beck,* at p. 297; see also *Gary Plastic Packaging Corp.,* at p. 180 ["[T]here is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it"]; *Hanon,* at p. 509 [certification properly denied where "it is predictable that a major focus of the litigation will be on a defense unique to" the putative representative].)

---

[8] We leave it for the trial court to determine whether, on remand, it may be appropriate or necessary to designate subclasses consisting of those subjected to demands who made payments and have restitution claims, and those who did not and thus have only injunctive and declaratory relief claims. Contrary to Fireside Bank's assertion, the fact the record does not (as yet) disclose in which general group Gonzalez falls does not render the trial court's conclusion that her claims are typical of an abuse of discretion.

Contrary to Fireside Bank's assertion, however, a defendant's raising of unique defenses against a proposed class representative does not automatically render the proposed representative atypical. An appellate court reviewing a grant of certification in the face of such defenses must still review the trial court's decision deferentially. (*Feder v. Electronic Data Sys. Corp.* (5th Cir. 2005) 429 F.3d 125, 136–137.) The risk posed by such defenses is the possibility they may distract the class representative from common issues; hence, the relevant inquiry is whether, and to what extent, the proffered defenses are "likely to become a major focus of the litigation." (*Beck v. Maximus, Inc.*, supra, 457 F.3d at p. 301; accord, *Hanon v. Dataproducts Corp.*, supra, 976 F.2d at pp. 508–509; *Gary Plastic Packaging Corp. v. Merrill Lynch*, supra, 903 F.2d at p. 180; *Koos v. First National Bank of Peoria* (7th Cir. 1974) 496 F.2d 1162, 1164.)

Fireside Bank asserts (1) Gonzalez's father threatened the repossessor, depriving Gonzalez of any remedy under Civil Code section 2983.3, subdivision (b)(4), and (2) Gonzalez is subject to an unclean hands defense because she allegedly purchased the van on her father's behalf. Even assuming as true Fireside Bank's factual allegations (cf. *Linder v. Thrifty Oil Co.*, supra, 23 Cal.4th at p. 443), we discern no factually intensive or legally complex unique defenses that pose any significant risk of diverting Gonzalez's attention from class issues.

■ Civil Code section 2983.3, subdivision (b)(4) alters a buyer's rights only when "[t]he buyer or any other person liable on the contract" has committed or threatened acts of violence in connection with actual or attempted repossession. Whether Gonzalez's father made threats is a simple factual question; likewise, whether he qualifies as a "person liable on the contract" may be determined by easy reference to the parties' agreement.

The unclean hands defense also presents no threat to usurp a significant portion of Gonzalez's time. The facts underlying it are readily ascertainable, the doctrine is well understood, and the applicability or inapplicability of the doctrine may be resolved without significant distraction from the common class issues at the heart of this case.

Fireside Bank objects to inquiry into the substance of these defenses by noting our conclusion in *Linder* that a court, in determining class certification, should not consider the merits. (*Linder v. Thrifty Oil Co.*, supra, 23 Cal.4th at pp. 439–443.) But there, we said only that a plaintiff need not establish a likelihood of success on the merits in order to obtain class

certification. It does not follow that, in determining whether the criteria of Code of Civil Procedure section 382 are met, a trial or appellate court is precluded from considering how various claims and defenses relate and may affect the course of the litigation, considerations that may overlap the case's merits. (See *Hanon v. Dataproducts Corp.*, *supra*, 976 F.2d at p. 509 [court may consider "evidence which goes to the requirements of [Fed. Rules Civ.Proc.,] Rule 23 even though the evidence may also relate to the underlying merits of the case"].) Indeed, in *Linder* we expressly recognized that "whether the claims or defenses of the representative plaintiffs are typical of class claims or defenses" was an issue that might necessarily be intertwined with the merits of the case, but which a court considering certification necessarily could and should consider. (*Linder*, at p. 443; see *Hardy v. City Optical Inc.* (7th Cir. 1994) 39 F.3d 765, 770 [rejecting challenge to typicality based on arguable unique defense on basis that defense was not arguable in light of defendants' factual concessions].)

In sum, Fireside Bank's proffered defenses are neither factually intensive nor legally complex and do not threaten to consume an inordinate amount of time and become a major focus of the litigation. The trial court did not abuse its discretion in concluding Gonzalez's claims are typical of the class she seeks to represent.

### B. *Superiority*

Fireside Bank contends a class action is not superior to other means of proceeding because this action could proceed more efficiently as a non-class-representative action under the UCL. Fireside Bank concedes this argument rests on the premise that Proposition 64, approved by the voters at the November 2, 2004 General Election,[9] does not apply retroactively to this case and thus that the streamlined pre-Proposition-64 UCL procedures are still available and would provide a simpler alternative. As we have recently held, Proposition 64 *does* apply retroactively to cases such as this one that were filed before its passage but are still pending postenactment. (*Californians for Disability Rights v. Mervyn's, LLC*, *supra*, 39 Cal.4th at p. 227.) Thus, pre-Proposition-64 UCL procedures are unavailable, and Fireside Bank's argument fails.

---

[9] Proposition 64 modified the UCL by, inter alia, imposing new standing requirements for parties seeking relief and requiring those pursuing representative actions to satisfy the class requirements of Code of Civil Procedure section 382. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 228–229 [46 Cal.Rptr.3d 57, 138 P.3d 207]; Bus. & Prof. Code, § 17203.)

### DISPOSITION

For the foregoing reasons, we reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.