Filed 4/16/13  Jones v. Farmers Ins. Exchange CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KWESI JONES et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>FARMERS INSURANCE EXCHANGE,<br><br>        Defendant and Respondent. | B237765<br><br>(Los Angeles County<br>Super. Ct. No. BC412413) |

        APPEAL from an order of the Superior Court of Los Angeles County,

Maureen Duffy-Lewis, Judge.  Affirmed.

        Thierman Law Firm, Mark R. Thierman, Jason J. Kuller; Eric M. Epstein;

United Employees Law Group and Walter Haines for Plaintiffs and Appellants.

        Seyfarth Shaw, Candice T. Zee, George Preonas, Andrew Paley and Eric Steinert

for Defendant and Respondent.

Kwesi Jones, on behalf of himself and others similarly situated (collectively Plaintiffs), filed a class action complaint against Farmers Insurance Exchange (Farmers) alleging wage and hour violations. Plaintiffs appeal the denial of their motion for class certification and the striking of their amended class certification motion. Plaintiffs contend the trial court erred in concluding that common issues of fact and law do not predominate over individual issues, that class certification would not provide substantial benefits to litigants and the courts, and that Jones was not an adequate class representative. We conclude that plaintiffs have shown no prejudicial abuse of discretion and will affirm the order.

### FACTUAL AND PROCECURAL BACKGROUND

1.      *Factual Background*

Farmers employs claims representatives to adjust insurance claims for physical damage to automobiles. "Auto Physical Damage" (APD) claims representatives spend most of their time in the field inspecting damaged vehicles at auto body shops or other locations, meeting with claimants, negotiating the settlement of claims, and accessing and entering information onto Farmers's database using laptop computers. They obtain their assignments using a computer program known as ServicePower, which they access using laptop computers. Claims representatives travel to their first assignment of the day from their homes rather than from an office, and their travel time to their first assignment is uncompensated unless it exceeds their normal travel time.

Farmers issued a personalized memorandum with the subject line "Work Profile" to each APD claims representative shortly after the ServicePower program was first

2

implemented in 2008. The memorandum stated the normal work hours for each claims representative and stated that each claims representative was required to be present at the location of his or her first assignment at the beginning of the workday. It stated that driving time from the employee's home to the first assignment of the day and from the last assignment of the day back home was not compensable unless the time exceeded the employee's normal commute time or the employee, with the approval of a supervisor, was performing compensable administrative work at home.

The "Work Profile" memorandum also stated that claims representatives might be required to perform work tasks at home for which they would not be compensated. It described compensable and noncompensable work tasks as follows:

"1.) Computer sync time which ordinarily takes minimal time to perform and is not compensable. For example, taking a few minutes to sync your computer, obtaining assignments/driving directions before getting in your car and driving to your first appointment. Your work day does not begin until you arrive at your first assignment, unless your commute was longer than their normal commute.

"2.) Administrative, which is defined as 'principle' work and is compensable. For example, you take 30 minutes to perform required administrative duties, with supervisor approval before getting in your car and driving to your first assignment. Because the administrative work is considered principle work you will be compensated for this time, plus all drive time to your first assignment. The same would be true for the drive home if administrative work needs to be completed at home to end the day."

Jones worked for Farmers as a claims representative from March 2006 until September 2008, when Farmers discharged him for an alleged pattern of reporting that he was working in the field when he was actually at home. Jones filed a complaint against Farmers regarding his discharge. That action has been settled and dismissed.

2.     *Trial Court Proceedings*

Plaintiffs filed their complaint against Farmers in the present action in April 2009 and filed a first amended complaint in May 2010 alleging that Farmers failed to compensate its APD claims representatives for work performed before the beginning of their scheduled shifts. Plaintiffs allege that such unpaid work includes starting up their computer each day, logging on to the ServicePower program, obtaining their first assignment, downloading property damage estimate forms, contacting auto body shops to confirm the location of damaged vehicles, contacting the insured and driving to the auto body shop or other location of their first assignment.

Plaintiffs allege counts for (1) unpaid overtime; (2) failure to provide itemized wage statements; (3) failure to pay minimum wages; (4) civil penalties under Labor Code section 2699; and (5) unfair competition. They seek damages, statutory penalties and restitution. Each count is alleged both by Jones individually and on behalf of a class of current or former Farmers employees who are not exempt from California's overtime laws and who worked as APD claims representative and used the ServicePower program to obtain their work assignments.

4

Plaintiffs filed a motion for class certification in March 2011 seeking to certify the same class described in the complaint.[1] The motion was supported by the declarations of 51 putative class members. The declarants stated, generally, that they were required to perform various tasks in the morning before arriving at the location of their first assignment, as alleged in the complaint, but were not compensated for the time spent performing those tasks. They stated that their work shifts generally began upon their arrival at the location of their first assignment or at 8:00 a.m. and that they spent, on average, 4.28 hours per week performing unpaid work before the beginning of their shifts. Plaintiffs argued that Farmers had a company-wide policy of requiring APD claims representatives to work at home without compensation and that the "Work Profile" memorandum was evidence of this policy.

Farmers filed an ex parte application to continue the hearing on the motion to August 19, 2011. The trial court granted the application on March 30, 2011, continuing

---

[1]    Plaintiffs sought certification for two classes defined as follows:
"A.  Class 'A' is defined as all current or former non-exempt employees employed by Defendant as APD Claims Representatives, Senior APD Claims Representatives, and Special APD Claims Representatives, in the State of California, within the four years preceding the filing of the original Complaint to the date entry of judgment, who used a package of computer software called ServicePower to obtain their assignments for the day.  [¶]  B.  Class 'B' is defined as all current or former non-exempt employees employed by Defendant as APD Claims Representatives, Senior APD Claims Representatives, Special APD Claims Representatives, in the State of California, within the four years preceding the filing of the original Complaint to the date of entry of judgment, who used a package of computer software called ServicePower to obtain their assignments for the day, and who were not furnished either as a detachable part of the check, draft or voucher paying the employee's wages, or by separate document, an accurate itemized statement showing the total hours worked by each employee and/or furnished with all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee in violation of California Labor Code § 226."

the hearing to August 19, 2011. Plaintiffs filed an amended class certification motion in May 2011 seeking to modify the class definition to include all of the previously described employees who used either ServicePower or the Pathways program to obtain their work assignments. The court continued the hearing on the class certification motion to October 28, 2011.

Farmers opposed the class certification motion arguing that it had no uniform policy requiring unpaid preshift work and, absent such a policy, individual issues predominated and class treatment was inappropriate. Farmers argued that its claims representatives were not required to work off-the-clock and were prohibited from doing so, and argued that the "Work Profile" memorandum did not show otherwise. It also argued that Jones was not an adequate class representative and that his claims were not typical of those of the class.

Farmers filed declarations by 11 current or former APD field claims supervisors or managers, five claims representatives, and the director of the Los Angeles claims service division. The declarations stated, generally, that claims representatives regularly received their first assignment of the day on the afternoon of the previous workday and made initial contact with the claimant at that time. They stated that if the claims representatives needed additional time to prepare for an early morning appointment, they requested and regularly received approval to work overtime and that they were prohibited from working outside of their scheduled shifts without prior authorization.

Farmers filed a motion in September 2011 to strike plaintiffs' amended motion for class certification. It argued that the amended motion was an attempt to amend the complaint to expand the class definition without filing a motion for leave to amend the complaint. It argued that the motion therefore was procedurally improper and should be stricken under Code of Civil Procedure section 436, subdivision (a) as "irrelevant, false, or improper" (*ibid.*) matter. Farmers also argued that its employees did not obtain assignments through the Pathways program and that Farmers would be prejudiced by an expansion of the class definition after two years of litigation. Plaintiffs opposed the motion to strike.

The trial court heard the class certification motion and the motion to strike on October 28, 2011. In a minute order filed on November 3, 2011, the court concluded that the class was sufficiently numerous and ascertainable and that Jones's claims were typical of those of the class. The court found, however, that Jones was not an adequate class representative because (1) he failed to file a declaration in support of the motion and therefore failed to show that he understood his fiduciary obligation owed to the class, and (2) "he was terminated for manipulating Service Power to indicate that he was working when, in fact he was not," showing a "lack of credibility."

The trial court also found that common issues did not predominate. It stated that the parties disputed what tasks were required to be performed before the beginning of the shift, that Farmers's evidence showed that it did not always deny requests for overtime to complete some tasks and that plaintiffs therefore had "not demonstrated that defendant has a classwide policy of refusing to pay overtime." The court stated,

7

"Whether a particular class member would be approved for overtime to complete first contact tasks creates individualized questions that must be addressed before it can be determined that defendant did not compensate the class member for off-the-clock work."

The trial court stated further that whether the putative class members had time to complete the required tasks before the first appointment of the day also involved individualized inquiries and numerous variables including, "1) when a particular assignment was posted to Service Power; 2) how busy the class member was on the day the assignment was posted; 3) whether the amount of time spent on first assignment tasks was de minimus; 4) whether the class member requested overtime to perform first contact tasks; 5) the first appointment time assigned to a class member as compared to the start of their shift; and 6) commute time." It stated that these individualized inquiries compelled the conclusion that common questions did not predominate. The court also stated that the lack of commonality meant that a class action was not a superior method for resolving the dispute.

The trial court stated with respect to the motion to strike the amended motion for class certification that Code of Civil Procedure section 437 was inapplicable because the motion was not a pleading. The court concluded, however, that there was no legal basis for the proposed amendment and therefore granted the motion to strike.

Plaintiffs timely appealed the order denying the motion for class certification and the striking of their amended class certification motion.[2]

## *CONTENTIONS*

Plaintiffs contend (1) common issues of law and fact predominate, primarily with respect to the existence of a uniform policy denying compensation for legally compensable work performed prior to the beginning of the shift; (2) a class action is a superior means to conduct this litigation; (3) Jones is an adequate class representative; and (4) the striking of plaintiffs' amended class certification motion was error.

## *DISCUSSION*

1.  *Standard of Review*

We review an order granting or denying class certification for abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-327 (*Sav-On*).) A trial court is afforded great discretion in ruling on class certification. Such a ruling generally will not be disturbed on appeal unless it is (1) not supported by substantial evidence, (2) based on improper criteria, or (3) based on erroneous legal assumptions. (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*).)

"Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to

---

[2] An order effectively terminating class claims while allowing individual claims to proceed is appealable under the "death knell" doctrine. (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757-759.)

9

support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436.)

2.      *Class Certification Requirements*

A party moving for class certification must show "(1) [] a sufficiently numerous, ascertainable class, (2) [] a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' [Citation.]" (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1089.)

"The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' [Citation.] A trial court ruling on a certification motion determines 'whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.]" (*Sav-On*, *supra*, 34 Cal.4th at p. 326.) The focus in a certification dispute is on whether common or individual questions are likely to arise in the action, rather than on the merits of the case. (*Id.* at p. 327.)

"The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' [Citations.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021-1022, fn. omitted.)

Thus, a class may be certified even if class members must individually prove their right to recover damages and the amount of damages. But common issues do not predominate if such individual issues are numerous and substantial compared to the common issues. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459; *Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, 732; *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 396.)

3. *The Trial Court Properly Decided that Common Issues Do Not Predominate*

Plaintiffs' theory of recovery is that a uniform policy applicable to all putative class members denied them compensation for work performed at home before the beginning of their scheduled shifts. The existence of such a policy is a factual question that is common to all class members and is amenable to class treatment. Whether such a policy, if it exists, deprives employees of compensation for work for which they are entitled to compensation is a legal question that is common to all class members and is amenable to class treatment.

Plaintiffs contend the trial court decided that common issues did not predominate based in part on the existence of a factual dispute as to whether Farmers had a uniform policy denying compensation for legally compensable work. They argue that the court improperly focused on the merits and applied improper criteria in this regard. We disagree. We believe that the court referred to the factual dispute as to the existence of a uniform policy not as a reason to deny certification, but instead to explain why it is necessary to decide numerous individual issues relating to each employee's right to recover. Regardless of whether it is true that the existence of such a factual dispute makes it necessary to decide the individual issues identified by the trial court, as suggested by the trial court, or whether those individual issues must be addressed even if there were no factual dispute regarding the existence of a uniform policy, we conclude that the trial court did not improperly focus on the merits in this regard.

The trial court stated that whether a particular class member would have been approved for overtime if he or she had requested it and whether a class member had time to complete the required tasks before his or her first appointment of the day were individual issues. The court also enumerated several other individual issues, including, "1) when a particular assignment was posted to Service Power; 2) how busy the class member was on the day the assignment was posted; 3) whether the amount of time spent on first assignment tasks was de minimus; 4) whether the class member requested overtime to perform first contact tasks; 5) the first appointment time assigned to a class member as compared to the start of their shift; and 6) commute time."

Whether these individual issues are so numerous and substantial compared to the common issues regarding a uniform policy that the common issues do not predominate is a question within the trial court's discretion. Plaintiffs have not shown an absence of substantial evidence to support the trial court's decision or that the decision is based on improper criteria or erroneous legal assumptions. We therefore conclude that Plaintiffs have shown no abuse of discretion in the trial court's decision that common issues do not predominate. The trial court properly denied class certification on this basis.

In light of our conclusion, Plaintiffs' contentions that the trial court's superiority analysis was flawed and that Jones is an adequate class representative are moot.

4.     *Plaintiffs Have Shown No Prejudicial Error in the Striking of*
       *Their Amended Class Certification Motion*

Plaintiffs' amended class certification motion differed from the original motion in that they sought to certify a class of APD claims representatives who used either

13

ServicePower or another program, known as Pathways, to obtain their work assignments. They contend the striking of their amended motion was error, but they do not argue that their proposed amendment to the class definition would affect the predominance analysis in any material way. Plaintiffs therefore have failed to show any prejudice, as required for a reversal. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800.)

## *DISPOSITION*

The order denying the class certification motion and striking the amended class certification motion is affirmed.  Farmers is entitled to recover its costs on appeal.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.