Filed 12/21/22  Dhillon v. Anheuser-Busch CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| MANMOHAN DHILLON et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>ANHEUSER-BUSCH, LLC et al.,<br><br>Defendants and Respondents. | F082763<br><br>(Super. Ct. No. 14CECG03039)<br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Kimberly A. Gaab, Judge.

Gustafson Gluek, Dennis Stewart, Daniel C. Hedlund, Michelle J. Looby, Joshua J. Rissman; Coleman & Horowitt, Darryl J. Horowitt, Sherrie M. Flynn; Freedman Boyd Hollander Goldberg Urias & Ward, Joseph Goldberg and Frank T. Davis, Jr., for Plaintiffs and Appellants.

Wanger Jones Helsley, Oliver W. Wanger, Patrick D. Toole; Cadwalader, Wickersham & Taft, Brian D. Wallach and Gregory W. Langsdale for Defendant and Respondent Anheuser-Busch, LLC.

Chielpegian Cobb and Mark E. Chielpegian for Defendant and Respondent Donaghy Sales, LLC.

-ooOoo-

Plaintiffs appeal from the second denial of their motion for class certification. Initially, their motion was denied by the trial court on the ground the proposed class was not ascertainable. Plaintiffs appealed that order, and we affirmed. The Supreme Court granted review, then transferred the matter back to this court for reconsideration in light of its decision in *Noel v. Thrifty Payless, Inc*. (2019) 7 Cal.5th 955. Applying the rules governing ascertainability, as clarified by the Supreme Court in that case, we concluded class certification was not properly denied on that basis. We reversed the trial court's order and remanded for a redetermination of the class certification motion.

The trial court again denied the motion. It concluded plaintiffs met their burden of demonstrating ascertainability and numerosity but failed to demonstrate that common issues of law or fact predominate, that the named plaintiffs have claims typical of the claims of the proposed class, that they can adequately represent the proposed class, and that a class action would provide a superior procedure for litigating the case. Plaintiffs again appeal. We conclude the trial court abused its discretion in denying class certification. Accordingly, we reverse and remand to the trial court for a redetermination of the motion for class certification.

## FACTUAL AND PROCEDURAL BACKGROUND

Five named plaintiffs filed this action on behalf of themselves and a class of persons similarly situated. The operative pleading, the second amended complaint, alleges the following: Plaintiffs and the class they seek to represent own and operate retail convenience stores in Fresno and Madera Counties; they sell beer manufactured by defendant Anheuser-Busch, LLC (Anheuser-Busch) and distributed by defendant Donaghy Sales, LLC (Donaghy) (collectively, defendants). California law requires wholesalers of beer to sell to retailers on a nondiscriminatory basis and to charge only the prices they have filed with the Department of Alcoholic Beverage Control (ABC). A

2.

wholesaler may not charge a different price to a special customer. The wholesaler's prices may be modified by filing a new or amended schedule of prices with the ABC.

Plaintiffs allege that, in violation of the wholesale beer pricing and unfair competition laws, during the class period,[1] Donaghy sold beer to certain favored retailers at effective wholesale prices that were lower than the prices it filed with the ABC. It did this by providing the favored retailers with disproportionate numbers and amounts of consumer coupons for discounts off the retail price of beer. Instead of providing the coupons to consumers, however, the favored retailers redeemed the coupons themselves, not related to a particular sale of beer to a consumer as required by the coupons. The favored retailers redeemed the coupons by presenting them to Donaghy for credit against a subsequent purchase of beer, by redeeming them through a third party redemption center, or, if in the form of a check, by depositing the check in the retailer's bank account.

As a result of this scheme, favored retailers who received and redeemed coupons effectively paid wholesale prices below the prices filed with the ABC and below the prices paid by disfavored retailers, who are the members of the proposed class. Plaintiffs seemed to concede some members of the proposed class also received coupons from Donaghy, but they alleged class members received substantially fewer than the favored retailers. This coupon scheme gave the favored retailers an unfair competitive advantage because they could sell beer at retail at a price below the wholesale price paid by the disfavored retailers. This forced the disfavored retailers to match, or attempt to match, the favored retailers' lower prices, which were often at or below the disfavored retailers'

---

[1] The class definition in plaintiffs' motion indicates the class period is October 10, 2010, through December 31, 2014. As defendants point out, Business and Professions Code section 25600.3, which took effect on January 1, 2015, now prohibits the use of coupons for beer. Plaintiffs do not appear to contend defendants have provided coupons to, or reimbursed retailers for, coupons after that date.

wholesale prices. Some aspects of this scheme were known to the disfavored retailers, but the full extent of the scheme was concealed from them.

Plaintiffs allege Vinay Vohra and Vikram Vohra, as well as others to be identified later, were favored retailers and coconspirators with Anheuser-Busch and Donaghy. These favored retailers allegedly accepted large numbers of coupons and used them to compete unfairly, including by selling at retail below the wholesale price Donaghy filed with the ABC, "in active cooperation with the Defendants."

The second amended complaint also alleges defendants sometimes dictated the retail prices the disfavored retailers could charge, requiring them, through threats of retaliation, to charge higher retail prices than the favored retailers. Also, Donaghy personnel sometimes demanded or accepted kickbacks in exchange for coupons, communicated pricing changes to favored retailers in advance of their effective date, took orders from favored retailers at the new prices prior to their effective date, and imposed shelving requirements on disfavored retailers by threatening not to sell to retailers who did not agree to them.

The second amended complaint contains four causes of action: (1) unfair competition by means of unlawful business practices (Bus. & Prof. Code,[2] § 17200 et seq.); (2) unfair competition by means of unfair business practices, including allegations of incipient violation of antitrust laws (§ 17200 et seq.); (3) secret payment or allowance of rebates (§ 17045); and (4) soliciting or participating in the secret payment or allowance of rebates in violation of section 17045 (§§ 17047, 17048).

Plaintiffs filed a motion for class certification, redefining the class and adding Hardeep Singh as an additional favored retailer and alleged coconspirator; the class definition expressly excluded the favored retailers from the class. Defendants opposed

---

[2]     All further statutory references are to the Business and Professions Code unless otherwise indicated.

4.

the motion, and the trial court denied it, concluding plaintiffs failed to demonstrate the existence of an ascertainable class. On appeal, we affirmed, but the Supreme Court granted plaintiffs' petition for review and transferred the matter back to this court to reconsider it in light of the decision in *Noel v. Thrifty Payless, Inc.*, *supra*, 7 Cal.5th 955, which clarified the standards applicable to the ascertainability of a proposed class. On reconsideration, we concluded the trial court applied a standard inconsistent with that set out in *Noel*; we reversed the trial court's order denying certification and remanded for the trial court to determine ascertainability using the *Noel* standard and to determine whether the other elements necessary for class certification were met.

On remand, the parties filed further papers. The trial court again denied the motion. It found that, while plaintiffs demonstrated ascertainability and numerosity of the class, they failed to demonstrate that common issues of law and fact predominated as to all their claims. On the claim that plaintiffs were overcharged for beer, the expert declaration of Marianne DeMario, a forensic accountant, demonstrated there were common issues. The trial court concluded, however, that plaintiffs' allegations of price fixing and other antitrust violations required a showing of harm to competition, but plaintiffs failed to demonstrate such an injury could be proven by common evidence.

The trial court also found plaintiffs failed to demonstrate that the named plaintiffs have claims typical of the class and that they can adequately represent the interests of all class members. Further, it concluded that, because of the lack of common questions and typical claims, plaintiffs had not demonstrated the superiority of proceeding with the case as a class action; plaintiffs had not demonstrated that the benefits of certifying the class would outweigh the burdens.

Plaintiffs appeal the second denial of their motion for class certification. They contend the trial court misapprehended the theory of their case and misapplied the law governing class certification.

5.

## DISCUSSION

### I. Standard of Review

"The denial of certification to an entire class is an appealable order." (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 435.) "A trial court's order granting or denying class certification is subject to review for abuse of discretion. [Citation.] 'Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification.' " (*In re Cipro Cases I & II* (2004) 121 Cal.App.4th 402, 409.) In the absence of other error, a certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089 (*Fireside Bank*); *Linder*, at pp. 435–436.)

"An appeal from an order denying class certification presents an exception to customary appellate practice by which we review only the trial court's ruling, not its rationale." (*Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4th 388, 399.) " '[W]hen denying class certification, the trial court must state its reasons, and we must review those reasons for correctness.' " (*Hendershot v. Ready to Roll Transportation, Inc*. (2014) 228 Cal.App.4th 1213, 1221.) " '[W]e review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial.' " (*Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 658.)

### II. Standards for Class Certification

"Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court ….' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326 (*Sav-On Drug Stores*).) "Class

6.

certification requires proof (1) of a sufficiently numerous, ascertainable class, (2) of a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, the 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1089.) "The certification question is 'essentially a procedural one that does not ask whether an action is legally or factually meritorious.' " (*Sav-On Drug Stores*, at p. 326.)

"On a motion for class certification, the plaintiff has the 'burden to establish that in fact the requisites for continuation of the litigation in that format are present.' " (*Caro v. Procter & Gamble Co*. (1993) 18 Cal.App.4th 644, 654.) In reviewing a certification order, the court considers "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment. [Citations.] 'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question.' " (*Sav-On Drug Stores*, *supra*, 34 Cal.4th at p. 327.)

## III.    Trial Court's Ruling

The trial court found plaintiffs met their burden of demonstrating the putative class is ascertainable and sufficiently numerous to support class certification. It concluded plaintiffs did not meet their burden of establishing a well-defined community of interest. The trial court observed that the second amended complaint alleges the putative class suffered at least two types of harm: (1) overcharges for the purchase of beer from Donaghy because the putative class allegedly paid an effective wholesale price higher than the effective wholesale price paid by the favored retailers, who were given an illegal secret rebate; and (2) damages from an illegal price-fixing scheme in which defendants

7.

coerced the putative class members to price the beer they sold above, or not below, the prices charged by the favored retailers, which allowed the favored retailers to compete unfairly and illegally with the putative class members by allowing the favored retailers to charge retail prices below those of the putative class members.

As to the alleged price-fixing scheme, plaintiffs offered the expert opinion of Dr. J. Douglas Zona, an economist, which concluded the alleged use of coupons caused harm to competition. The trial court found Zona's expert opinion was insufficient to demonstrate there were common issues of law or fact regarding plaintiffs' claims of price fixing or other antitrust violations because his opinion concerning harm to competition was not based on any empirical evidence; Zona did not determine whether any putative class members actually reduced their retail prices in order to compete with the favored retailers. Accordingly, the trial court refused to "certify a class with regard to any claim of price fixing or damage to competition."

As to the alleged overcharges, the trial court found DeMario's expert report concluded that all, or nearly all, of the putative class members were injured in a similar manner by the common scheme of providing coupons that acted as secret rebates, resulting in putative class members effectively paying higher wholesale prices for beer than the favored retailers. The trial court concluded plaintiffs "met their burden of showing that there are common issues of law and fact regarding the injuries suffered by the proposed class."

The trial court found, however, that plaintiffs failed to show that their claims were typical of those of the putative class members and they could adequately represent the putative class. It purportedly based these conclusions on the declarations of the named plaintiffs, which showed they were pressured by Donaghy to lower their retail prices for Anheuser-Busch beer in return for coupons that reimbursed them for doing so; the declarations did not show that plaintiffs received fewer coupons than the favored retailers

8.

or that they were instructed to use them to effectively give themselves a secret rebate off the wholesale price of the beer. Further, the deposition testimony of plaintiffs stated they paid the prices filed with the ABC when they purchased beer from Donaghy, the coupons did not reduce the invoice price they paid Donaghy for beer but merely reimbursed them for discounts they gave to retail customers, and the money from the coupons did not go into their pockets but was passed through to retail customers.

The trial court also found plaintiffs had not shown the benefits of proceeding as a class action would outweigh the disadvantages and burdens; that is, they did not show the superiority of the class procedure as a means of litigating their claims. The named plaintiffs did not suffer the same injuries as the putative class; there was no evidence the alleged coupon scheme caused any harm to competition by compelling putative class members to reduce retail prices, lose profits, or go out of business; and it was unclear how many, if any, of the other putative class members might have suffered injury as a result of the alleged coupon scheme. The trial court opined that a multitude of minitrials would be necessary to determine whether each putative class member had a valid claim and how much damage that class member sustained. Additionally, plaintiffs did not offer a trial plan or strategy that showed the case could be tried in a manageable and efficient way.

## IV.    Numerous, Ascertainable Class

The first requirement for class certification is the existence of a "sufficiently numerous, ascertainable class." (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1089.) The trial court determined that plaintiffs met their burden of demonstrating the elements of ascertainability and numerosity exist as to the proposed class. This conclusion has not been challenged, and we need not address it.

## V. Well-defined Community of Interest

The second requirement for certification of a class action is a well-defined community of interest among the putative class members. (*Sav-On Drug Stores*, *supra*, 34 Cal.4th at p. 326.) "[T]he 'community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1089.)

### A. Predominant common questions of law or fact

"Plaintiffs' burden on moving for class certification … is not merely to show that some common issues exist, but, rather, to place substantial evidence in the record that common issues *predominate*." (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1108.) "Predominance is a comparative concept." (*Medrazo v. Honda of North Hollywood* (2008) 166 Cal.App.4th 89, 99.) It "requires a showing 'that questions of law or fact common to the class predominate over the questions affecting the individual members.' " (*In re Cipro Cases I & II*, *supra*, 121 Cal.App.4th at p. 410.) "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

"To assess predominance, a court 'must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1024.) The legal elements of the causes of action must be considered in determining whether common issues predominate. (*Apple Inc. v. Superior Court* (2018) 19 Cal.App.5th 1101, 1116.) The court "must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to

10.

manage effectively proof of any elements that may require individualized evidence."
(*Alberts v. Aurora Behavioral Health Care*, *supra*, 241 Cal.App.4th at p. 398.) "In deciding whether the common questions 'predominate,' courts must do three things: 'identify the common and individual issues'; 'consider the manageability of those issues'; and 'taking into account the available management tools, weigh the common against the individual issues to determine which of them predominate.' " (*Id*. at p. 397.)

The trial court's ruling did not separately address the four causes of action alleged in the second amended complaint. It did not discuss the elements of the causes of action, or whether they raised issues susceptible of common proof. The trial court reached general conclusions without associating them with the elements of any specific cause of action. Consequently, it is not clear to which cause or causes of action some of its findings were intended to apply. Nonetheless, we will discuss each cause of action separately and attempt to relate the trial court's conclusions to the cause or causes of action that include the element to which the conclusion is relevant.

### 1.      First Cause of Action—Unlawful Business Practices

Plaintiffs' first and second causes of action allege violations of California's unfair competition law (UCL) (§ 17200 et seq.). The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice." (§ 17200.) Because the statute "is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647.) Plaintiffs' first cause of action is alleged under the "unlawful" prong of section 17200.

"The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' " (*Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316, 340.) It also " 'provides an equitable means through which … private individuals can bring suit to

prevent unfair business practices and restore money or property to victims of these practices.' " (*Ibid.*, italics omitted.) "While the scope of conduct covered by the UCL is broad, its remedies are limited. [Citation.] A UCL action is equitable in nature; damages cannot be recovered." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.) "[U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.' " (*Ibid*, first bracketed insertion added.) A restitution order compels " 'a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken.' " (*Ibid.*)

"An unlawful business practice under section 17200 is ' "an act or practice, committed pursuant to business activity, that is at the same time forbidden by law." ' " (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 287, italics omitted.) "By prohibiting unlawful business practices, ' "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.' " (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980.) "Virtually any state, federal or local law can serve as the predicate for an action under … section 17200." (*Podolsky v. First Healthcare Corp.*, *supra*, 50 Cal.App.4th at p. 647.)

Plaintiffs' first cause of action alleges defendants committed unlawful business practices by violating sections 25000, 25001, 25004, and 17045.

Section 25000 provides, in part:

> "(a) Each … wholesaler of beer shall file and thereafter maintain on file with the department … a written schedule of selling prices charged by the licensee for beer sold and distributed by the licensee to customers in California …. Each … wholesaler of beer shall file a price schedule for each county in which his or her customers have their premises …. Different prices for different trading areas within a county shall be based

12.

upon natural geographical differences justifying the different prices, and shall not be established for special customers." (§ 25000, subd. (a).)[3]

Section 25001 authorizes a wholesaler to modify its schedule of prices by filing a new schedule or an amendment to its existing schedule. Section 25004 provides that, once a new or amended schedule has become effective, "all prices therein stated shall be strictly adhered to by the filing licensee, and any departure or variance therefrom by a licensee is a misdemeanor." (§ 25004.) Thus, these sections would be violated if a wholesaler charged a retailer a price other than the applicable wholesale price on file with the ABC at the time. A wholesale customer's remedies under the UCL would be injunctive relief and restitution of any money wrongfully obtained from that customer.

In their motion for class certification, plaintiffs asserted that, pursuant to sections 25000, 25001, and 25004 they are seeking amounts they were overcharged for beer during the class period. They contend Anheuser-Busch and Donaghy used coupons to unlawfully give the favored retailers discounts from the filed wholesale price of beer. Plaintiffs maintain that, in order to reduce the wholesale price to any retailer, Donaghy was required by these statutes to file a new or modified schedule of wholesale prices with the ABC, reflecting the price reduction, and charge the new price to all retailers. Plaintiffs concede that many of the putative class members received coupons from Donaghy and redeemed them. They contend, however, that, because Anheuser-Busch and Donaghy used larger numbers of coupons to give larger discounts to the favored retailers, effectively lowering the wholesale price those favored retailers were charged below the price charged to the putative class members, they were in violation of the pricing statutes; consequently, all disfavored retailers who were charged a higher effective wholesale price than the effective wholesale price charged to the favored retailers at the time are entitled to recover the overcharges.

---

[3] Plaintiffs' class definition includes retail business establishments in Fresno and Madera Counties that plaintiffs refer to generally as convenience stores.

In their motion, plaintiffs argued that the central issues presented by their claims can be determined on a class-wide basis. They identified the central issues as: "Whether the couponing practices Plaintiffs complain about constitute effective discounts from the posted wholesale prices for beer and hence violate B&P Code §§ 17200 [*sic*] and the Unfair Practices Act § 17045; and whether these violations harmed all or nearly all class members." Plaintiffs asserted evidence of the coupon program is largely documentary, and would show the operation of the rebate scheme, sales transactions within the class period, the filed wholesale prices, the rebates given, to whom they were given, and on what products and in what amounts they were given. Plaintiffs supported their motion with the expert report of DeMario, which analyzed the information found in Donaghy's sales records and the records of the third party redemption center that redeemed many of the coupons. DeMario concluded "that all or nearly all of the proposed class members were injured in a similar manner by the alleged scheme, as they effectively had to pay higher wholesale prices for [Anheuser-Busch] beer purchased from Donaghy as compared to the favored retailers." DeMario offered two methods of calculating restitution of the overcharges for all the putative class members collectively.

The trial court concluded that, to the extent plaintiffs and the putative class are seeking recovery of overcharges for the purchase of beer products from Donaghy, DeMario's expert opinion satisfied plaintiffs' burden "of showing that there are common issues of law and fact regarding the injuries suffered by the proposed class." The trial court's conclusion appears to apply to plaintiffs' first cause of action, which alleges plaintiffs were overcharged for Anheuser-Busch beer products through the coupon scheme. Plaintiffs interpret the trial court's statement as a finding that common issues predominate in the first cause of action.

The issue presented by a class certification motion is not whether some common issues exist, but whether plaintiffs have shown that common issues predominate.

14.

(*Lockheed Martin Corp. v. Superior Court*, *supra*, 29 Cal.4th at p. 1108.) The trial court did not find that common issues predominate in the overcharge claims, but only that there are common issues "regarding the injuries suffered by the proposed class." In considering whether common issues predominate, a court "must determine whether the elements necessary to establish liability are susceptible of common proof, or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence." (*Brinker*, *supra*, 53 Cal.4th at p. 1024.) By its terms, the trial court's ruling addressed only issues regarding class injuries, not issues that would establish defendants' liability. It did not reflect a weighing of common issues against individualized issues, determine whether any individualized issues may be managed effectively within a class action, or conclude common issues predominate. Thus, it is not clear whether the trial court intended its ruling to mean that common issues of law or fact predominate in the first cause of action.

Additionally, the first cause of action includes allegations of violation of section 17045. Plaintiffs' motion for class certification did not address these allegations at all in its discussion of the first cause of action. The trial court also did not specifically address them in its ruling.

Section 17045 is part of the Unfair Practices Act (§ 17000 et seq.) and provides:

"The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." (§ 17045.)

Thus, as alleged in this case, a violation of section 17045 requires a (1) secret (2) payment or allowance of rebates that (3) injures a competitor and (4) tends to destroy competition. A violation of this section requires proof of elements beyond those required for a violation of sections 25000, 25001, and 25004. The trial court did not analyze the

15.

issues raised by the section 17045 claim along with those raised by sections 25000, 25001, and 25004, or determine whether, as to the first cause of action as a whole, common issues predominate.  Consequently, the trial court's analysis of the first cause of action to determine whether common issues of law or fact predominate is incomplete.  It did not identify the issues raised by all the elements of the cause of action, consider all the proper criteria related to those issues, or reach a conclusion on the proper legal question:  predominance of common issues.

### 2. Second Cause of Action–Unfair Business Practices

The second cause of action of plaintiffs' second amended complaint alleges that the same couponing conduct alleged in the first cause of action also constitutes a violation of the "unfair" business practices prong of the UCL.  The second cause of action alleges violations of:  the fair and equal, nondiscriminatory pricing policies of sections 25000, 25001, and 25004; the policy expressed in section 17001, "to 'foster and encourage competition by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented' "; the policies underlying section 17045, the secret rebate statute; the policies underlying sections 17043 and 17049, which prohibit selling below cost for the purpose of injuring competitors or destroying competition; and the policies underlying the Cartwright Act (§ 16720 et seq.), which is California's antitrust law.

Section 17045 prohibits secret rebates to purchasers that injure a competitor, where the allowance of the rebate tends to destroy competition.  Section 17043 makes it unlawful for any person engaged in business to sell below its cost "for the purpose of injuring competitors or destroying competition"; section 17049 extends the reach of section 17043 to any scheme of special rebates that has the effect of violating section 17043.  The Cartwright Act " 'generally outlaws any combinations or agreements

which restrain trade or competition or which fix or control prices.' " (*Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1147.)

Plaintiffs argue that, with the exception of the element of harm to competition, the elements of the second cause of action are substantially similar to the elements of the first cause of action. They interpret the trial court's ruling as finding that common issues predominate in the first cause of action and argue the same common elements are present in the second cause of action. As to the element of harm to competition, plaintiffs cite *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 166 (*Cel-Tech*) for the proposition that actual harm to competition is not required in order to prove an unfair business practice; a threatened effect on competition is sufficient for that purpose. Plaintiffs argue they demonstrated, through the declaration of their expert witness, Zona, that the element of harm, or threatened harm, to competition can be proven by the class through common evidence.

In *Cel-Tech*, the Supreme Court determined that the definitions the Courts of Appeal had developed for the term "unfair" business practices, as used in the unfair competition law, were "too amorphous and provide too little guidance to courts and businesses." (*Cel-Tech*, *supra*, 20 Cal.4th at pp. 184–185.) It devised a more precise test:

> "[T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition. We thus adopt the following test: When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech*, *supra*, 20 Cal.4th at pp. 186–187.)

17.

*Cel-Tech* "defined 'unfair' in the context of a UCL action by one competitor against a direct competitor" and "made clear that its discussion about 'unfair' practices was limited to actions by competitors alleging anticompetitive practices, and did not relate to actions by consumers." (*Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1254.) Here, plaintiffs and the putative class are not direct competitors of Anheuser-Busch and Donaghy; they claim to be direct competitors of the favored retailers, who are named defendants. Plaintiffs also allege practices of Anheuser-Busch and Donaghy that they contend interfere with their ability to compete on fair terms with the favored retailers. Accordingly, we apply the *Cel-Tech* test.

Under the *Cel-Tech* test, actual harm to competition is not required in order to establish that defendant's business practices are unfair. "[C]onduct that threatens an incipient violation of an antitrust law" or "otherwise significantly threatens … competition" is sufficient to establish a business practice is "unfair" under the UCL. (*Cel-Tech*, *supra*, 20 Cal.4th at p. 187.)

In its order, the trial court concluded that "plaintiffs have failed to meet their burden of showing that there are common issues of law or fact with regard to their claims to the extent that they rely on harm to competition based on the alleged price fixing or other antitrust violations. Indeed, in their reply, plaintiffs deny that they are alleging they were forced to fix or reduce their prices by defendants' coupon scheme, and instead contend that they are only alleging claims for restitution based on the alleged overcharges for wholesale beer prices caused by the coupon scheme. However, their contention is inconsistent with the allegations of their own second amended complaint, which clearly alleges that plaintiffs are seeking damages for defendants' conduct in coercing the class members to keep their prices artificially high and other anticompetitive conduct."

As the trial court pointed out, the second cause of action raises issues beyond those raised by plaintiffs' claims that they were overcharged through the discriminatory

18.

use of coupons. The second cause of action alleges Anheuser-Busch and Donaghy sometimes dictated retail prices to class members, requiring that they price their beer above, or at least not below, the price of the favored retailers, and threatening retaliation for noncompliance. Donaghy agreed with favored retailers not to supply disfavored retailers with coupons so the favored retailers could underprice the disfavored retailers, often below the disfavored retailer's cost. Donaghy's employees sometimes demanded or accepted kickbacks in exchange for coupons; sometimes communicated pricing intentions to favored retailers in advance of the effective date of filed pricing changes; took orders from favored retailers at the new prices prior to their effective date; timed amendments that lowered prices on the filed pricing schedule to benefit favored retailers who would receive deliveries on weekends, unlike disfavored retailers; and frequently imposed shelving requirements on disfavored retailers, requiring the retailer to devote a certain percentage of its shelf space to Anheuser-Busch products and backing the requirement with threats that Donaghy would not sell beer to that retailer at all or would limit its allocation of products to the retailer at the filed sale price if the retailer did not comply. Plaintiffs' motion did not attempt to demonstrate that these activities, which allegedly occurred "sometimes" or "frequently," could be proven on a class-wide basis.

The trial court declined to "certify a class with regard to any claim of price fixing or damage to competition." Most of the statutes cited as the basis for the second cause of action require a business practice that "tends to destroy competition" (§ 17045), is engaged in "for the purpose of injuring competitors or destroying competition" (§ 17043), or destroys or prevents fair and honest competition (§ 17001). The trial court based its decision on its conclusion that plaintiffs had presented no evidence the alleged price-fixing activities actually harmed competition. It concluded Zona's declaration did not establish any such harm because his opinion was not based on any empirical evidence of actual price effects caused by the alleged coupon scheme. Under *Cel-Tech*, however,

19.

actual harm to competition is not an essential element of a claim of unfair business practices under the UCL. A significant threat to competition or a threat of an incipient antitrust violation suffices. (*Cel-Tech*, *supra*, 20 Cal.4th at p. 187.) Thus, the trial court applied an improper legal standard.

Plaintiffs' second cause of action alleges that price fixing at the retail level and selective discounting of wholesale prices through the use of coupons threatened an incipient violation of antitrust law: they tended "to impede and delay the dissemination of lower prices in the market," because, if Donaghy had lowered prices generally, by filing a new price schedule with the ABC instead of offering coupons to some retailers, but not others, retailers would have learned of the reduced prices more quickly, resulting in "more broadly based price reductions at the retail level across Fresno and Madera [C]ounties." The trial court did not consider whether plaintiffs made a sufficient showing, through Zona's declaration or other evidence, that these allegations raise common issues regarding a significant threat to competition or a threat of an incipient antitrust violation that could be addressed on a class-wide basis. The trial court also failed to weigh the common issues that may be jointly tried against those issues that require individual adjudication to determine which predominate. We conclude the trial court applied an incorrect standard, requiring a showing of actual harm to competition, rather than presentation of evidence that a significant threat to competition or a threat of an incipient antitrust violation could be demonstrated on a class-wide basis. It also failed to weigh the common issues against the issues requiring separate adjudication to determine whether the common issues predominate. Thus, the decision regarding the second cause of action rests on improper criteria and erroneous legal assumptions.

### 3. Third and Fourth Causes of Action—Secret Rebates

Plaintiffs' third cause of action alleges a violation of section 17045, which requires a (1) secret (2) payment or allowance of rebates that (3) injures a competitor and

20.

(4) tends to destroy competition.  The fourth cause of action alleges violation of sections 17047 and 17048, which make it unlawful for any manufacturer or wholesaler to solicit or participate in a violation of section 17045 or to collude with another in a violation of section 17045.

Plaintiffs broadly claim these causes of action present common questions regarding whether defendants violated these sections by "not filing and posting, and selectively implementing, coupon rebates."  They contend the trial court abused its discretion by failing to address and analyze these causes of action in its ruling.

Because one of the elements of these causes of action is a tendency of the secret rebates to destroy competition, the trial court's refusal to certify a class "with regard to any claim of … damage to competition" appears to apply to these causes of action.  As previously discussed, the trial court did not apply the proper criteria in its analysis of the element of damage to competition.  Consequently, to the extent the trial court intended to deny certification of these causes of action based on plaintiffs' failure to demonstrate that damage to competition could be proven on a class-wide basis, that denial would be based on improper criteria and erroneous legal assumptions.

Additionally, the trial court did not analyze all of the elements of these causes of action, identify the common or individual issues raised by them, or determine whether plaintiffs showed that common issues predominate.

### B.  Typical claims

Class "[c]ertification requires a showing that the class representative has claims or defenses typical of the class." (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1090.)  The class representatives must be members of the class they claim to represent and must be situated similarly to the class members. (*Caro v. Procter & Gamble Co.*, *supra*, 18 Cal.App.4th at p. 663.)  "The typicality requirement's purpose ' "is to assure that the interest of the named representative aligns with the interests of the class. [Citation.]  ' "Typicality

refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." ' [Citations.]  The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " ' " (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 375.)

The trial court concluded the evidence did not support a finding that the named plaintiffs had claims typical of the class.  It found their declarations merely stated they were pressured by Donaghy to lower their retail prices for Anheuser-Busch beer and they would receive coupons to compensate them for lowering their retail prices.[4]  "Plaintiffs do not allege that they were not given the same number of coupons as the favored retailers, or that they were instructed to use the coupons they did receive to effectively give them a secret rebate off the wholesale price of beer.  At most their allegations show that they were given coupons to reimburse them for reducing their retail prices, which apparently resulted in no net loss to them.  Thus, plaintiffs' declarations fail to establish that they were subjected to a discriminatory scheme where they did not receive as many coupons as the favored retailers."

The primary theory of plaintiffs' case, asserted on behalf of the named plaintiffs and the class, is that coupons were given to the favored retailers in relatively large numbers while they were either not given to or given in significantly smaller numbers to the disfavored retailers making up the putative class.  As a result, the class members effectively paid a higher wholesale price for Anheuser-Busch beer than the favored retailers; this violated the beer pricing and unfair competition laws, which required wholesalers to sell beer to all retailers in Fresno and Madera Counties at the same price.

---

**4**     We note that only one of the seven declarations cited by the trial court in support of these statements was the declaration of a named plaintiff.  The others were declarations of putative class members.

22.

Regardless whether the coupons ostensibly were given to reimburse the retailer for a reduction in price given to the retail customer, plaintiffs contend redemption of the coupons effectively lowered the wholesale price paid by the redeeming retailer to Donaghy for Anheuser-Busch beer products. Whether this was actually the legal effect of coupon redemption is a merits question that is not relevant to the certification issue. Thus, declarations stating that named plaintiffs or putative class members were pressured by Donaghy to lower their retail prices in exchange for coupons are not inconsistent with plaintiffs' theory of the case and do not render the named plaintiffs' claims atypical of the claims asserted by the putative class in the second amended complaint.

The trial court's concern that the declarations did not state they were given fewer coupons than the favored retailers is unfounded. That information is contained in DeMario's report. Her report included a summary of the information she collected from the records of Donaghy and the third party redemption center, indicating the value of coupons redeemed by each of the retailers in the putative class, including the named plaintiffs, to the extent that information was available.

The trial court's observation that the named plaintiffs did not declare they were instructed to use the coupons they received to effectively give them a secret rebate off the wholesale price of beer does not make their claims atypical. The second amended complaint does not allege that any member of the class was so instructed. Rather, plaintiffs contend that redemption of the coupons had the effect of reducing the wholesale price paid by the redeeming retailers for Anheuser-Busch beer products purchased from Donaghy.

The trial court also cited deposition testimony of the named plaintiffs that they were not charged wholesale prices different from the prices Donaghy filed with the ABC, the coupons did not reduce the invoice price plaintiffs paid for beer products purchased from Donaghy, and the coupon discount was passed on to the retail customer and

23.

reimbursed later. Again, these are the same allegations made by the named plaintiffs on behalf of the class: the wholesale price of the beer products was effectively reduced by the use of coupons subsequent to the purchase of the products, and the favored retailers received a greater reduction because they received more coupons than the disfavored retailers.

We conclude the trial court misconstrued the nature of plaintiffs' claims and misapplied the standards for determining the typicality of a class representative's claims. A class representative is not required to have identical interests with all of the class members. (*Classen v. Weller* (1983) 145 Cal.App.3d 27, 46.) Here, the class representatives claim the same type of injury, arising from the same conduct by the defendants, as the putative class. We conclude the trial court erred in determining that the named plaintiffs do not have claims typical of the class.

## C. Adequacy of representation

"To maintain a class action, the representative plaintiff must adequately represent and protect the interests of other members of the class. [Citation.] This requirement is a natural consequence of the equitable origins of the action and is the product in part of the relation between the res judicata effect of the class judgment on absent members and the requirements of due process." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 463.) "Adequacy of representation depends on whether the plaintiff's attorney is qualified to conduct the proposed litigation and the plaintiff's interests are not antagonistic to the interests of the class." (*McGhee v. Bank of America* (1976) 60 Cal.App.3d 442, 450.) " 'It is axiomatic that a putative representative cannot adequately protect the class if his [or her] interests are antagonistic to or in conflict with the objectives of those he [or she] purports to represent. But only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. Moreover, if the court can … divide the class into subclasses or … separate those issues

24.

that merit class action treatment so as to remove any antagonism, then the action need not be dismissed.' " (*Richmond v. Dart Industries, Inc*. (1981) 29 Cal.3d 462, 470–471.)

"When a court decides a proposed class certification request, to consider issues of adequacy and fairness of representation, it will evaluate 'the seriousness and extent of conflicts involved compared to the importance of issues uniting the class; the alternatives to class representation available; … the procedures available to limit and prevent unfairness; and any other facts bearing on the fairness with which the absent class member is represented.' " (*Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, 851.)

The trial court did not separately consider whether the class representatives demonstrated that they could adequately represent the class. It lumped together the typicality and adequacy of representation requirements and concluded that, for the same reasons their claims were not typical, the named plaintiffs would not be adequate representatives of the putative class. The trial court did not consider whether any conflicts or antagonistic interests exist between the named plaintiffs and the other members of the proposed class.

We note that, according to *G.H.I.I. v. MTS, Inc*. (1983) 147 Cal.App.3d 256, an action for unfair business practices founded on a violation of the secret rebate statute (§ 17045) may be maintained not only against the seller who granted the secret rebate to the buyer, but also against the buyer who received it. (*G.H.I.I.*, at p. 271.) If, as plaintiffs contend, redemption of coupons violated section 17045, because it constituted receipt of a secret rebate which resulted in the redeeming retailer paying a lower wholesale price for beer products, then the members of the class who redeemed coupons reaped the benefits of the secret rebates. That may put the members of the putative class who did not redeem coupons in a significantly different position than those who redeemed coupons, which may result in antagonistic or conflicting interests.

25.

Further, the methods of calculating restitution proposed by DeMario do not distinguish between the putative class members who did not receive or redeem any coupons and the members who redeemed some coupons but allegedly not as many as the favored retailers. She combines the two groups in her calculations. In Alternative One, she compares the average discount received by the favored retailers through the use of coupons with the average discount received by the putative class. In Alternative Two, she compares the largest discount received by any retailer (favored or disfavored) during a promotion period with the average discount received by the putative class. In either case, she averages the discounts received by all 808 putative class members, although only 310 or 372 putative class members (depending on which data is consulted) redeemed coupons; plaintiffs admit at least 436 putative class members did not redeem any coupons and therefore did not receive any reductions from the filed wholesale price. The effect of her calculations is to attribute price reductions to at least 436 putative class members who received none.

We recognize that DeMario's calculations are a means of presenting the restitution claims on behalf of the class as a whole and do not necessarily address distribution of any recovery among the class members. In determining the adequacy of the named plaintiffs' representation of the class as a whole, however, it appears the status of the named plaintiffs, who in this case all appear to have redeemed coupons, and the potential for a conflict of interest caused by the difference in status, are valid considerations.[5]

Because the trial court did not separately consider whether the named plaintiffs would adequately represent the class and did not analyze potentially conflicting or antagonistic interests in making that determination, we conclude the trial court's analysis of this element is incomplete.

---

[5] "Case law imposes fiduciary duties on the trial courts, class counsel, and class representatives, who must ensure the action proceeds in the class members' best interest." (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 266.)

## VI.    Superiority of Class Procedure

In addition to demonstrating there is a sufficiently numerous, ascertainable class and a well-defined community of interest, plaintiffs seeking class certification must demonstrate that certification will provide substantial benefits to the litigants and the court, that is, that proceeding as a class is superior to other methods.  (*Fireside Bank*, *supra*, 40 Cal.4th at p. 1089.)  Regarding the superiority of the class method, the trial court stated the same problems it identified with regard to community of interest also weighed against finding that a class action would be a superior procedure.  "The named plaintiffs apparently did not suffer the same injuries as the other proposed class members, and, in fact, they denied that the coupons were used to lower the wholesale price they paid to Donaghy for [Anheuser-Busch] beer.  There is also no evidence that the alleged coupon scheme caused any harm to competition by forcing the class members to reduce their prices, lose profits, or go out of business.  It is unclear how many, if any, of the other class members might have suffered injury due to the alleged coupon scheme."  The trial court concluded "a multitude of mini-trials" would be required to adjudicate the individual claims of the class members to determine whether each has a valid claim and how much damage they sustained.

Regarding the named plaintiffs' denial that the coupons were used to lower the wholesale price they paid, the theory of plaintiffs' case is that the coupons in fact had that effect; whether plaintiffs and the class members understood they had that effect would not change the outcome.  Plaintiffs contend the effect of the coupons is a common issue suitable for litigation on a class-wide basis.  The trial court, earlier in its ruling, appeared to agree when it accepted DeMario's declaration as showing a common scheme of providing coupons that acted as secret rebates and showing all or nearly all of the putative class members were injured in a similar manner by the alleged coupon scheme.  The trial court's conclusion that "[i]t is unclear how many, if any, of the other class

27.

members might have suffered injury due to the alleged coupon scheme" appears to contradict its earlier statement that DeMario's declaration showed all or nearly all of the putative class members were injured in a similar manner by the alleged coupon scheme.

As previously discussed, actual harm to competition is not a required element of plaintiffs' second cause of action for unfair business practices under the UCL. The trial court did not analyze, for any cause of action, whether plaintiffs demonstrated that the type of harm or threatened harm to competition required for each cause of action can be proven on a class-wide basis by common evidence.

Thus, the trial court did not consider the appropriate factors in determining whether proceeding by class action would be superior to proceeding by individual actions.

We conclude the-trial court abused its discretion by denying plaintiffs' motion for class certification.

## DISPOSITION

The order denying class certification is reversed. We remand the matter to the trial court for further consideration of the motion for class certification consistent with the views expressed in this opinion. Plaintiffs are awarded their costs on appeal.


HILL, P. J.

WE CONCUR:


SMITH, J.


DE SANTOS, J.